UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
NETEL SPRINGER, HANA SPRINGER
and BARBARA SPRINGER,

                      Plaintiffs,

-against-

LINCOLN SHORE OWNERS, INC.,

                      Defendant.
-----------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 03-CV-4676 (FB)(KAM)

*Appearances:*
*For the Plaintiffs:*
WILLIAM A. THOMAS, ESQ.
89 Fifth Avenue, Suite 900
New York, New York 10003

*For the Defendant:*
THOMAS P. KERRIGAN, ESQ.
Finder Novick Kerrigan, LLP
315 Park Avenue South
New York, New York 10010

**BLOCK, Senior District Judge:**

       Plaintiffs Netel Springer, Hana Springer and Barbara Springer (collectively "the Springers") sue defendant, Lincoln Shore Owners, Inc. ("Lincoln Shore"), alleging that Lincoln Shore's termination of Barbara's proprietary lease violated the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, because Lincoln Shore did not make reasonable accommodations for Netel's hearing impairment prior to the lease termination. Pursuant to Federal Rule of Civil Procedure 56, Lincoln Shore moves for summary judgment on the grounds of judicial estoppel, collateral estoppel and *res judicata*. For the following reasons, the Court concludes that the Springers' claims are barred by *res judicata*.

# I.

Lincoln Shores owns a cooperative apartment building in Brooklyn. In 1993, Barbara purchased shares in Lincoln Shore for $37,000.00 and was thereupon issued a proprietary lease in Apartment E-12, where she lived with her parents, Netel and Hana.

On October 4, 2000, Lincoln Shore terminated the lease on the ground that the Springers had repeatedly violated a building rule prohibiting excessive noise. Lincoln Shores then brought a summary holdover proceeding against plaintiffs in New York City Civil Court.

The Springers answered, generally denying the allegations of the holdover petition and raising as affirmative defenses (1) lack of personal jurisdiction, (2) lack of subject-matter jurisdiction, (3) failure to state a claim, (4) failure to properly verify the petition, (5) waiver of the ground for termination, and (6) retaliatory eviction. On the advice of counsel, they later entered into a stipulation of settlement, "so ordered" by the Civil Court, in which they denied having made excessive noise, but otherwise "waive[d] the service of an Answer and/or Counterclaims." Affirmation of Thomas P. Kerrigan ("Kerrigan Affirmation"), Ex. G (Stipulation of Settlement) ¶ 2. They further agreed to "refrain from any future conduct that causes unreasonable noise disturbance to other residents." *Id.* ¶ 5. In exchange, Lincoln Shore agreed not to pursue the holdover proceeding; however, the parties agreed that the Civil Court would retain jurisdiction in case the Springers defaulted on their agreement.

On January 26, 2001, Lincoln Shore declared the Springers in default and resumed the holdover proceeding. The Civil Court held a three-day hearing limited to the

issue of whether they had violated the stipulation of settlement; although Netel testified at the hearing that he suffered from a 50% hearing loss, the Springers did not argue that Lincoln Shore was required to make reasonable accommodations for Netel's impairment as a defense to the termination of the lease.

The Civil Court found that the Springers had "violated the Stipulation of Settlement . . . by continuing to cause unreasonable noise disturbance to other residents of the subject building." Kerrigan Affirmation, Ex. K (Decision & Order dated Dec. 17, 2001) (internal quotation marks omitted). Accordingly, the Civil Court issued a judgment of possession and warrant of eviction. *See id.* (Decision & Judgment dated Jan. 25, 2002).

The Springers appealed to the Appellate Term of the Supreme Court, which unanimously affirmed the Civil Court's judgment, holding that "[t]he overwhelming weight of the evidence supports the Civil Court's finding that [the Springers] engaged in objectionable conduct." *Id.*, Ex. L (Opinion & Judgment dated May 1, 2003). The Springers then sought leave to appeal to the Appellate Division, which was denied. *See id.*, Ex. N (Decision & Order dated July 2, 2003).

On August 11, 2003, the Springers sought reargument of their unsuccessful leave application, claiming for the first time that the termination of the lease violated the FHA and ADA; they were evicted two days later. The Appellate Division summarily denied the motion for leave to reargue, without comment, on September 11, 2003. Barbara's shares were scheduled to be sold at judicial auction on September 17, 2003, after which she would receive the proceeds of the sale, net of liens and legal fees.

One day before the scheduled sale of Barbara's shares, the Springers commenced the present action, seeking a declaration that Lincoln Shore's actions violated the FHA and ADA; a permanent injunction restoring them to possession of the apartment, reinstating the lease and enjoining the sale; and compensatory and punitive damages totaling $4 million. By order to show cause, they also sought a preliminary injunction restoring them to possession and staying the sale. After oral argument, this Court did not grant preliminary injunctive relief: "Based on the colloquy with the Court on September 16, 2003, plaintiff failed to establish a likelihood of success on the merits and irreparable harm." Docket Entry No. 5 (Order dated Sept. 29, 2003).

Thereafter, in September 2004, the Springers, proceeding *pro se*, commenced an action in New York Supreme Court seeking $500,000 in damages because Lincoln Shore and its law firm had allegedly committed various improprieties with respect to the eviction and the conduct of the judicial sale. Kerrigan Affirmation, Ex. Y (Complaint dated Sept. 2, 2004). The state court held that the Springers' claim regarding the propriety of the eviction was barred by *res judicata*, but that the claim regarding the conduct of the judicial sale was not. *Id.*, Ex. Z (Decision & Order dated June 17, 2005).

## II.

"[T]hough the federal courts may look to the common law or to the policies supporting *res judicata* and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so[.]" *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citing 28

U.S.C. § 1738)). The Court, therefore, analyzes the preclusive effect to be given the Civil Court's judgment under New York law.

## A. Judicial Estoppel

Under New York law, the doctrine of judicial estoppel "holds that a party successfully taking a position in one proceeding may not thereafter assume an inconsistent position in a subsequent proceeding." *Kalikow 78/79 Co. v. State*, 577 N.Y.S.2d 624, 627 (1st Dep't 1992). "However, judicial estoppel may not be asserted as a defense unless it can be shown that the party against whom the estoppel is sought procured a judgment in its favor as a result of the inconsistent position taken in the prior proceeding." *Id.* Even assuming that the Springers' allegations regarding Netel's disability are inconsistent with their failure to raise the issue in the holdover proceeding, that proceeding did not result in a judgment in their favor; therefore, the doctrine of judicial estoppel does not apply.

## B. Collateral Estoppel

Under New York law, "[t]he doctrine of collateral estoppel operates where there is an identity of issues which were actually decided on the merits in a prior action and where the parties, or ones in privity with them, had a full and fair opportunity to contest the issues." *W.L. Dev. Corp. v. Thalgott*, 387 N.Y.S.2d 902, 903 (2d Dep't 1976). "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456 (1985).

5

Although the Springers eventually raised the "reasonable accommodation" issue in a motion to reargue the denial of their application for leave to appeal, there is nothing to suggest that the motion was decided on the merits; it could very well have been decided on the ground that "reargument may not be used to raise new questions not previously advanced in the briefs." *People v. Ramos*, 488 N.Y.S.2d 762, 764 (2d Dep't 1985) (citing *Simpson v. Loehmann*, 21 N.Y.2d 990 (1968)). Since Lincoln Shore has not established that the Appellate Division reached the merits of the "reasonable accommodation" argument, it may not invoke collateral estoppel. *Cf. 10 Park Square Assocs. v. Travelers*, 757 N.Y.S.2d 394, 395 (4th Dep't 2003) (holding that denial of motion to reargue did not establish law of the case because "[an] order denying reargument [is] not a decision on the merits").

## C. *Res Judicata*

"Under the doctrine of *res judicata*, a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." *In re Hunter*, 4 N.Y.3d 260, 269 (2005). Unlike collateral estoppel, *res judicata* applies "not only to claims actually litigated but also to claims that could have been raised in the prior litigation," *id.*; moreover, it applies to defenses as well as to causes of action. *See, e.g., Mony Credit Corp. v. Colt Container Servs., Inc.*, 565 N.Y.S.2d 126, 127 (2d Dep't 1991) ("Since the defenses raised by the defendants in opposition to summary judgment in the instant action were either raised or could have been raised as defenses in the prior action . . . , they are thus barred by the doctrine of *res judicata*.").

6

There is no question that the Civil Court proceeding involved the same parties and resulted in a judgment on the merits in favor of Lincoln Shore. The Springers argue, however, that the "reasonable accommodation" issue could not have been raised in the holdover proceeding (1) because the scope of the proceeding was limited to the issue of whether they had violated the stipulation of settlement, and (2) because even if they had raised the "reasonable accommodation" issue, the Civil Court would not have addressed it.

The Springers' first argument merits only brief discussion. While it is certainly true that the scope of the Civil Court proceeding was limited, that limitation was imposed by the Springers' agreement to the stipulation of settlement; nothing prevented the Springers from instead insisting, at the outset of the litigation, on their right to pursue all reasons why the lease could not legally be terminated. That the Springers chose to forego the "reasonable accommodation" issue does not mean that they could not have raised it.

With regard to their second argument, the Springers rely exclusively on the fact that, in summary holdover proceedings, the Civil Court often severs counterclaims. *See, e.g., Smalkowski v. Vernon*, 2001 WL 914248 (N.Y. City Civil Ct. Mar. 9, 2001) (declining to exercise jurisdiction over federal counterclaims based on race and disability discrimination). But whether or not a "reasonable accommodation" *counterclaim* would have been severed in this case, the Springers unquestionably could have, but for the stipulation, raised the same issue – whether Lincoln Shores was required to accommodate

Netel's hearing impairment in lieu of terminating the lease – as a *defense*: "As a general rule ... a 'reasonable accommodation' defense is available at any time before a judgment of possession has been entered[.]" *Douglas v. Kriegsfeld Corp.*, 884 A.2d 1109, 1121 (D.C. 2005) (citing cases recognizing the defense). "The [Civil Court] may consider any defense to a cause of action or claim asserted by any party, whether such defense be denominated or deemed legal or equitable in nature." N.Y. City Civ. Ct. Act § 905.[1]

Since the Springers could have raised the "reasonable accommodation" issue as a defense, their ability or inability to raise it as a counterclaim is irrelevant:

> [New York's] permissive counterclaim rule may save from the bar of *res judicata* those claims for separate or different relief that could have been but were not interposed in the parties' prior action. It does not, however, permit a party to remain silent in the first action and then bring a second one on the basis of a preexisting claim for relief that would impair the rights or interests established in the first action.

*Henry Modell & Co. v. Minister of Reformed Protestant Dutch Church*, 68 N.Y.2d 456, 462 (1986) (citation omitted); *see also O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (N.Y. 1981) ("[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories *or if seeking a different remedy*." (emphasis added)).

In sum, the Civil Court, in entering judgment in favor of Lincoln Shore,

---

[1] In their papers and at oral argument, the Springers relied on the Court's decision in *Tellock v. Davis*, 2002 WL 31433589 (E.D.N.Y. Oct. 31, 2002); however, *Tellock* clearly recognized the distinction between counterclaims and defenses: "[T]he need for speedy dispositions in landlord-tenant matters ordinarily dictates that counterclaims be severed *unless they are in essence a defense to the landlord's claim or so intertwined with such a defense as to become part and parcel thereof.*" *Id.* at *4 (quoting *Committed Community Assocs. v Croswell*, 659 N.Y.S.2d 691, 693 (N.Y. Sup. Ct. 1997)) (emphasis added).

determined that Lincoln Shores was entitled to terminate the lease; although the Springers did not argue that the termination would violate FHA and ADA, they could have. To allow them to raise the argument now would plainly impair the rights and interests established in the Civil Court action; therefore, the present action is barred by *res judicata*. *See Se Dae Yang v. Korea First Bank*, 668 N.Y.S.2d 363, 364 (1st Dep't 1998) (claim for fraud in administration of mortgage barred by *res judicata* "because it could have been raised as a defense in [a prior foreclosure action.]").

### III.

The Court grants Lincoln Shore's motion for summary judgment on the ground that the Springer's claims are barred by *res judicata*. The complaint is dismissed.

**SO ORDERED.**

/signed/
_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 16, 2007